**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 01-10708**

---

**GREGORY VAN ALSTYNE,**

**Petitioner-Appellant,**

**versus**

**JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

---

**Appeal from the United States District Court**
**for the Northern District of Texas**
**(2:97-CV-454)**

---

April 8, 2002

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

In opposition to the death sentence imposed in Texas state court, Gregory Van Alstyne seeks a certificate of appealability (COA) from the denial of federal habeas relief, claiming ineffective assistance of counsel (IAC) based on the assertions that, for the punishment phase, his trial counsel did not: request psychiatric assistance; secure the attendance of a witness (Van

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Alstyne's mother); and file a continuance motion (required to be written and sworn) after that witness did not appear, thus precluding appellate review of the continuance-denial. **COA DENIED**.

I.

In April 1990, Van Alstyne and an accomplice ordered food to be delivered to the apartment of an acquaintance; they requested that the delivery man bring sufficient cash to change a $50 bill; and they were informed he would not carry that much cash. When the man arrived with the food, Van Alstyne attacked him; ordered his accomplice to open the victim's vehicle; and threw him into the back seat.

The accomplice drove the vehicle to a deserted field, while Van Alstyne continued to beat and stab the victim. He pleaded for his life until he lost consciousness. Van Alstyne crushed the victim's skull with a stone, and stabbed him in the stomach and neck. The victim died from loss of blood. Van Alstyne and his accomplice robbed him of the food and the approximate $20.00 in cash that he was carrying. Van Alstyne and his accomplice abandoned the victim's car; when they returned to the acquaintance's apartment, Van Alstyne bragged about the murder.

In 1992, Van Alstyne was convicted of capital murder; based on the jury's answers to the special issues, he was sentenced to death. On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence. *Van Alstyne v. State*, No.

71,500 (Tex. Crim. App. 7 June 1995) (unpublished). No petition for a writ of certiorari was filed with the Supreme Court of the United States.

In 1996, Van Alstyne filed his initial state post-conviction habeas application. The state trial court recommended denial. *Ex Parte Van Alstyne*, No. 30,941-B (47th Dist. Ct. for Potter County, Tex. 9 Apr. 1997) (unpublished). Relief was denied by the Texas Court of Criminal Appeals. *Ex Parte Van Alstyne*, No. 33-801-01 (Tex. Crim. App. 4 June 1997) (unpublished).

Van Alstyne filed for federal habeas relief in 1997. In a report and recommendation, the magistrate judge recommended denial. *Van Alstyne v. Johnson*, No. 2:97-CV-0454 (N.D. Tex. 16 Mar. 2001) (unpublished) (*Van Alstyne-USDC*). Van Alstyne filed objections to the report and recommendation; by a March 2001 order, the district court, after an independent review of the record, overruled the objections, adopted the report and recommendation, and denied relief. *Id.*

The magistrate judge construed Van Alstyne's notice of appeal as a COA request, but recommended denial. *Van Alstyne v. Johnson,* No. 2:97-CV-0454 (N.D. Tex. 5 June 2001) (unpublished). The district court adopted the recommendation. *Id.*

## II.

At issue is whether Van Alstyne is entitled to a COA premised on his punishment phase IAC claim. He makes this claim on three

3

independent bases, on his trial counsel's not: (1) requesting psychiatric assistance; (2) securing the attendance of a witness (his mother); and (3) filing a sworn continuance motion after that witness did not appear, precluding appellate review of the continuance-denial.

The Antiterrorism Effective Death Penalty Act (AEDPA) applies, because Van Alstyne's federal petition was filed after AEDPA's April 1996 effective date. *See **Lindh v. Murphy***, 521 U.S. 320, 336 (1997). Under AEDPA, Van Alstyne must be granted a COA in order to appeal the habeas-denial. 28 U.S.C. § 2253(c)(1)(A).

A COA may issue only upon "a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2). To meet this standard, Van Alstyne must show "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further". **Slack v. McDaniel**, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted).

When a claim is denied *on the merits*, Van Alstyne must demonstrate "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong". **Id**. (COA-merits-standard) For a denial of relief on *procedural grounds*, Van Alstyne must show that "jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling". *Id*. (emphasis added) (COA-procedural-standard).

The ruling on whether a COA should issue "must be made by viewing ... [Van Alstyne]'s arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)". *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001). Under that scheme, a federal habeas court must defer to the decision of a state court where it has adjudicated a claim on the merits, unless the state court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(1) & (2).

A state court decision is "contrary to [] clearly established Federal law, as determined by the Supreme Court of the United States .... if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts". *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision "involve[s] an

5

unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States .... if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case". *Id.*

For these questions, as well as whether the state court decision was based on an unreasonable determination of the facts in the light of the evidence presented in the state court proceeding, we must presume the state court's findings of fact correct *unless* that presumption is rebutted by "clear and convincing evidence". 28 U.S.C. § 2254(e)(1).

For the COA-merits-standard for each of the three claimed independent bases for IAC, Van Alstyne must address both parts of the well-known IAC test: (1) whether counsel's performance was deficient in that it "fell below an objective standard of reasonableness"; and (2) whether the deficient performance resulted in prejudice — "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

### A.

At the punishment phase, evidence of future dangerousness (the second special issue) included Van Alstyne's having been incarcerated for attempted robbery and having been released only

seven days before the murder at issue. Van Alstyne's counsel sought to mitigate Van Alstyne's behavior by stressing mental problems he experienced, arising out of traumas in his life.

Concerning trial counsel's not requesting psychiatric assistance for use in the punishment phase, the state habeas court found that, prior to trial and by court order, Dr. Shaw conducted a psychiatric examination of Van Alstyne and concluded he was mentally competent to stand trial. (The examination revealed that Van Alstyne was not suffering from a mental illness or defect, *but that he could be classified as having a mixed personality disorder with antisocial traits*.) The state habeas court ultimately concluded: Van Alstyne's counsel's not requesting another psychiatric examination was not deficient performance and not making such a request did not prejudice Van Alstyne.

In denying habeas relief on this point, the district court agreed with the state court that counsel's performance was not deficient, and that the decision was sound trial strategy. ***Van Alstyne-USDC***, at 10. The district court also ruled that Van Alstyne had failed to show prejudice. ***Id***. at 11. Accordingly, it concluded that the state court decision was neither contrary to, nor an unreasonable application of, federal law and that its findings of fact were not unreasonable. ***Id***. at 11-12.

7

1.

To meet the COA-merits-standard, Van Alstyne contends his counsel knew, or should have known, that mitigating evidence regarding an alleged mental illness existed; and that, as a result, counsel was deficient in not seeking psychiatric assistance. The cited evidence is: (1) records of the Texas Panhandle Mental Health Authority, dated September 1988, two years prior to the murder, that relate to Van Alstyne's two visits to a mental health facility; and (2) the facts about which his mother would have testified.

The mental facility records reflect the following. On his first visit, Van Alstyne reported that, while drinking, he became angry, got into a disagreement with his brother-in-law, and cut himself; Van Alstyne was discharged; and the facility's assessment was that Van Alstyne had no significant mental abnormalities, and his behavioral symptoms resulted from intoxication. On his second visit, Van Alstyne complained that he was afraid of himself and, the night before, had a compulsion to kill himself; he admitted he drank heavily almost every night; and he was diagnosed with an alcohol abuse problem and a generalized anxiety disorder with probable panic episodes.

Concerning Van Alstyne's mother, she stated in a post-trial affidavit (supporting a new trial motion) that she would have testified, *inter alia*, to the following: (1) Van Alstyne was born prematurely, with the umbilical cord wrapped around his neck; (2)

when he was young, he was run over by a vehicle, with a resulting change in his behavior and personality; (3) he was struck by lightning and "his mental condition seemed to worsen"; (4) his school performance was deficient; (5) he was physically abused by his father; (6) he did not walk until he was two years old and did not speak clearly until he was four years old; and (7) before he was 17 years old, he began drinking rice wine, often getting drunk and into trouble.

After reviewing the mental health facility records and the mother's proposed testimony, as well as the affidavit of Van Alstyne's trial counsel, the district court stated:

> [T]he record from the trial and the state habeas proceeding establishes that, at the most, petitioner's trial counsel were aware prior to trial that petitioner had some accidents as a child, was considered a slow learner, and had been diagnosed as having an alcohol dependency problem, an anxiety disorder evidently brought on by excessive drinking, and an antisocial personality disorder. *Further, one of petitioner's trial counsel ... has submitted an affidavit in which he states that he and his co-counsel ... discussed obtaining a psychiatric expert to assist the defense at trial, but determined the potential harm in having petitioner examined exceeded any potential benefit.* Given the lack of any diagnosis that suggested [Van Alstyne] suffered from a mental illness, *trial counsel's decision not to seek a psychiatric examination that might further indicate petitioner had an antisocial personality disorder was a reasonable strategic trial preparation decision.*
>
> Furthermore, *the State did not offer any psychiatric testimony at the punishment phase*

> of the trial as evidence that petitioner would be a future danger to society. Had defense counsel requested the assistance of a psychiatrist, however, they would have run the risk that the State would have presented its own psychiatric testimony to rebut the defense's evidence.

*Van Alsytne-USDC*, at 9-10 (internal citation omitted; emphasis added). Accordingly, the district court determined that, in the light of this, it was reasonable trial strategy not to seek psychiatric assistance as there was no diagnosis of a mental disorder, and any psychological examination could have been potentially more harmful than helpful.

a.

Van Alstyne claims he satisfies the COA-merits-standard for this holding, claiming it is erroneous because it represents the view expressed in two decisions rendered post-trial: *Lagrone v. State*, 942 S.W.2d 602, 610-11 (Tex. Crim. App.) (allowing "trial courts to order criminal defendants to submit to a state-sponsored psychiatric exam on future dangerousness when the defense introduces, *or plans to introduce*, its own future dangerousness expert testimony" (emphasis in original)), *cert. denied*, 522 U.S. 917 (1997); and *Soria v. State*, 933 S.W.2d 46, 57-58 (Tex. Crim. App. 1996) ("when the defendant initiates a psychiatric examination and based thereon presents psychiatric testimony on the issue of future dangerousness, the trial court may compel an examination of

11

[the defendant] by an expert of the State's or court's choosing"), *cert. denied*, 520 U.S. 1253 (1997).

The district court did *not* cite either of these cases. Nevertheless, Van Alstyne asserts that, under the law at the time of his trial, it would have been error for the trial court to have required Van Alstyne to submit to an examination by the State's expert as a condition of Van Alstyne's offering psychological testimony. For this assertion, Van Alstyne relies on **Bradford v. State**, 873 S.W.2d 15, 20 (Tex. Crim. App. 1993), *overruled by* **Soria**, 933 S.W.2d at 59 n.21.

**Bradford** held:

> [T]he trial court's action in making the admissibility of portions of [the defense expert's] proffered [psychological] testimony contingent upon [the defendant's] submitting to an examination by a State-selected expert was erroneous and such violated the Sixth Amendment to the United States Constitution. And under these circumstances the admission of [the State's expert's] testimony based upon his examination of [the defendant] violated [the defendant's] right against self-incrimination.

873 S.W.2d at 20.

Van Alstyne's trial took place in 1992; therefore, counsel did not have the benefit of **Bradford** (1993). Van Alstyne contends, however, that "**Bradford** cited several [pre-trial] cases dating back to 1986 which supported this view". **Bradford** relied upon three cases.

12

First, it cited **Bennett v. State**, 742 S.W.2d 664, 671 (Tex. Crim. App. 1987), *vacated*, 486 U.S. 1051 (1988), for the holding that a trial court does not "have the authority to appoint a psychiatrist for the purpose of examining a defendant for evidence relating solely to his future dangerousness".

Second, both **Bradford** and **Bennett** cited **McKay v. State**, 707 S.W.2d 23, 38 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 871 (1986), which held:  where there was no issue as to either the defendant's competency to stand trial or his sanity when the offense was committed, the State could not have the defendant examined solely on the future dangerousness issue.  **McKay** also held:  "[E]ven if [the defendant] had been examined, he could have prevented the State from using the evidence obtained by claiming his Fifth Amendment right against self-incrimination".  **Id**.

**Hernandez v. State**, 805 S.W.2d 409 (Tex. Crim. App. 1990), *cert. denied*, 500 U.S. 960 (1991), is the last of the three referenced cases cited by **Bradford**.  **Hernandez** held:  when the defendant elicited testimony on cross-examination of the physician that conducted defendant's competency exam that tended to show defendant suffered from paranoid schizophrenia, the defense "'opened the door'" to the State's questioning the physician on re-direct to establish the defendant suffered instead from an anti-social personality disorder.  **Id**. at 412.  **Hernandez** also observed that, although the physician did not do so, the physician was

13

prohibited from expressing an opinion on the defendant's future dangerousness.  *Id*.

With the stage set by **Bradford**, and these three pre-**Bradford** cases referenced by Van Alstyne, at issue is whether the decision not to seek psychiatric assistance because of the potential harm of its revealing potentially damaging evidence was reasonable trial strategy.  Regarding a strategic decision not to investigate certain evidence, **Strickland** held:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, *applying a heavy measure of deference to counsel's judgments*.

466 U.S. at 691 (emphasis added).

Our court has held that counsel makes a reasonable strategic decision when he does not introduce mitigating character evidence that would open the door to other, more damaging, evidence. **Williams v. Collins**, 16 F.3d 626, 632 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994).  **Williams** also held that counsel was not ineffective in not requesting a psychiatric examination of the defendant where counsel made a "knowing, strategic decision not to seek a psychiatric evaluation of [the defendant] because [counsel] feared the state would use rebuttal psychiatric testimony of [the defendant's] future dangerousness".  **Id.** at 634.  The conviction in

14

*Williams* occurred in Texas; *Williams* was decided after *Bradford* (1993), but before *Soria* (1996).

As stated, Van Alstyne's counsel did not have the benefit of the now-overruled *Bradford* plurality decision. In addition, while the cases relied upon by *Bradford* make it clear that, absent evidence proffered by a defendant of his mental status, the State cannot compel a psychiatric exam to investigate solely for evidence of future dangerousness, these cases do *not* signal the eventual *Bradford* holding that a defendant's proffered psychiatric testimony does not subject him to an examination by the State.

Accordingly, based upon the law at the time of Van Alstyne's trial, reasonable jurists would not find debatable the district court's holding that his counsel made a reasonable strategic decision not to seek expert psychiatric assistance because of the danger that any offered psychiatric testimony could have triggered the State's ability to offer potentially more harmful evidence. He has further failed to satisfy the COA-merits-standard because, even if the State could not have compelled its own examination, it is certainly possible that, in rebuttal, the State could have used the results of the exam by Van Alstyne's own expert to show future dangerousness; even *Bradford* does not prohibit such action.

b.

Even if reasonable jurists could debate whether counsel's strategic decisions were based upon an erroneous view of the law,

15

such error, alone, "does not give rise to a constitutional ineffectiveness claim", so long as the decision "was a conscious and informed tactical one". *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (internal quotation marks omitted). Van Alstyne has not shown that this decision was not conscious and informed. Moreover, trial counsel's affidavit reveals this decision was made after "disagreement among the trial team as to this issue".

To the extent Van Alstyne contends counsel should have requested the expert psychiatric assistance and then, based upon the results, decided whether to offer that expert testimony, he still has not satisfied the COA-merits-standard, especially in the light of counsel's fears that any psychiatric testimony would be rebutted by more damaging evidence, and no indication in the mental facility records or his mother's proposed testimony of Van Alstyne's ever having been diagnosed with a mental illness.

2.

Even assuming *arguendo* Van Alstyne has satisfied the COA-merits-standard for deficient performance, he has not satisfied it for the requisite prejudice. As the district court stated:

> While [Van Alstyne] had some behavior problems several years earlier due to excessive drinking, *there was no evidence at trial, nor is there any evidence or documentation now before the Court, that [Van Alstyne] has ever suffered from any mental illness*.... Without any such evidence, it cannot be said that [Van Alstyne] was prejudiced by defense counsel's

16

> decision not to use psychiatric testimony at
> the punishment phase....

***Van Alstyne-USDC***, at 11 (emphasis added).

### B.

Van Alstyne next claims counsel were ineffective in failing to secure the attendance of his mother, a resident of the Philippines, as a witness at the punishment phase. The trial court had agreed to pay her air fare and had written the United States embassy in Manila that she had very important mitigating evidence for the trial.

### 1.

The district court ruled that Van Alstyne had procedurally defaulted on this claim. ***Van Alstyne-USDC***, at 12-13. Procedural default occurs where "the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred". ***Bledsue v. Johnson***, 188 F.3d 250, 254 (5th Cir. 1999).

After reviewing Van Alstyne's state habeas petition, the district court determined that, although Van Alstyne had alleged IAC based on counsel's not requesting psychiatric assistance and not filing a sworn continuance motion after his mother did not appear to testify, Van Alstyne did not claim counsel were ineffective in failing to secure his mother's attendance. In fact, in his state habeas petition, Van Alstyne stated: "At the hearing, the evidence was undisputed that [his mother's] absence *was in no*

17

*way due to the negligence of [Van Alstyne's] counsel* and that *counsel had used due diligence in attempting to get her to trial".* (Emphasis added.)

The district court also concluded that, if Van Alstyne attempted to assert this claim in Texas courts through a subsequent habeas petition, he would be barred from doing so. ***Van Alstyne-USDC***, at 13. Under Texas law, a court may consider the merits of a subsequent habeas application only if it is established that:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application ... because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury....

TEX. CRIM. PROC. CODE ANN. art. 11.071, § 5(a) (Vernon Supp. 2002). (Although Van Alstyne can avoid the procedural bar by, for example, showing cause and prejudice for failing in his state habeas application to raise this unexhausted claim, *see **Jones v. Johnson***, 171 F.3d 270, 277 (5th Cir.), *cert. denied*, 527 U.S. 1059 (1999), he makes no attempt to do so.)

Van Alstyne fails to satisfy the COA-procedural-standard.

18

2.

Although the district court was not required to do so, it also addressed the merits of this claim. *See* 28 U.S.C. § 2254(b)(2) (petition *may* be denied on the merits even if state remedies not exhausted). It concluded there was neither deficient performance nor prejudice.

a.

Concerning deficient performance *vel non*, the district court ruled that Van Alstyne's mother's failure to appear was not the result of counsel's performance, but was instead caused by logistical problems.

Along this line, the district court noted that the state trial court coordinator working to secure the mother's presence testified that the defense investigator "had used due diligence and 'every effort' to attempt to obtain the presence of [Van Alstyne's] mother at the trial". **Van Alstyne-USDC**, at 14. It also noted the mother stated in her affidavit that: she could not obtain a travel visa until there was a definite entry and exit date; the dates were not established until the month before trial; and she encountered difficulties in meeting with personnel in the American Embassy in the Philippines to receive approval for her travel to the United States. **Id**.

Van Alstyne has not shown reasonable jurists would debate that his mother's absence can be attributed to his counsel.

19

Accordingly, he has not satisfied the COA-merits-standard for claimed deficient performance.

### b.

Concerning prejudice *vel non*, the district court ruled that the mother's testimony would have been cumulative of that of other witnesses, except for her proposed testimony regarding Van Alstyne's being hit by a vehicle and struck by lightning; and that Van Alstyne had presented no evidence that those accidents resulted in psychological damage other than that already testified to at trial — that he was a slow learner. (For example, Van Alstyne's uncle, who traveled to the trial from Africa, testified about the physical abuse Van Alstyne suffered at a very young age from his father.)

Van Alstyne maintains this ruling was incorrect, claiming prejudice because "the mere appearance by [his] mother to speak on behalf of her son and explain to the jury what his life was like and to take some amount of responsibility for him would have been powerful evidence, and perhaps the only hope [he] had to avoid a death sentence". Such an assertion is speculation. Van Alstyne has not satisfied the COA-merits-standard concerning whether prejudice resulted from his mother's not testifying.

### C.

In his third, and final, claimed basis for IAC, Van Alstyne maintains counsel were ineffective for making an oral, rather than

the required written and sworn, continuance motion after his mother did not arrive, thereby preventing review on direct appeal of the trial court's denial of the motion. *See* TEX. CRIM. PROC. CODE ANN. art. 29.03 & 29.08 (Vernon 1989) ("criminal action may be continued on the written motion of the State or of the defendant"; "[a]ll motions for continuance must be sworn").

In any event, the state habeas court rejected this IAC claim. It ruled that, at the time of the continuance hearing, and because Van Alstyne's counsel "had never talked with [Van Alstyne's] mother and had 'no way of knowing' whether the defense would want to call her as a witness", there was no basis for the trial court to grant a continuance. As a result, the state habeas court concluded counsel were not ineffective in not preserving this issue for review.

The district court ruled that, assuming *arguendo* counsel's performance was deficient for not filing the motion, Van Alstyne still had not shown prejudice. ***Van Alstyne-USDC***, at 18-20. According to the district court, had the continuance-denial been preserved for review by the Texas appellate courts, the denial would have been affirmed. It based this on the fact that, at the time counsel so moved (orally), there was no evidence before the trial court that the mother would testify to anything material or beneficial, because, as stated earlier, much of what she testified to would have been cumulative of the testimony of other witnesses.

21

*Id*. at 19-20. *See **Gentry v. State***, 770 S.W.2d 780, 786-88 (Tex. Crim. App. 1988) (to be entitled to a continuance the "expected testimony has to be material to the defendant"), *cert. denied*, 490 U.S. 1102 (1989).

Furthermore, the district court observed that the trial court did not have the benefit of the mother's affidavit when ruling on the motion. ***Van Alstyne**-USDC*, at 19. (As noted *supra*, it was filed subsequently with the new trial motion.) Therefore, the district court concluded that the trial court would not have been found to have abused its discretion in denying the motion. ***Id.*** *See **Duhamel v. State***, 717 S.W.2d 80, 83 (Tex. Crim. App. 1986) ("granting or denial of a motion for continuance is within the sound discretion of the trial court"), *cert. denied*, 480 U.S. 926 (1987).

Van Alstyne does not address the district court's ruling that he has not shown that, on direct appeal, the Texas court would have reversed the continuance-denial. "We have held repeatedly that we will not consider issues not briefed by the parties." ***Johnson v. Sawyer***, 120 F.3d 1307, 1315 (5th Cir. 1997). *See **McKethan v. Tex. Farm Bureau***, 996 F.2d 734, 739 n.9 (5th Cir. 1993) (failure to sufficiently brief issue constitutes a waiver of that issue), *cert. denied*, 510 U.S. 1046 (1994).

In any event, Van Alstyne has failed to satisfy the COA-merits-standard.

## III.

For the foregoing reasons, a COA is

DENIED.